### DWYER et al. v. CROSBY CO.

No. 203, Docket 20912.

Circuit Court of Appeals, Second Circuit.

April 26, 1948.

568

James R. Privitera, and George L. Grobe, U. S. Atty. in and for Western Dist. of New York, both of Buffalo, N. Y., for petitioner.

Frank Donner, Lee Pressman, and Eugene Cotton, all of Washington, D. C., for intervenors.

Eugene J. Donnelly, and Diebald & Diebald, all of Buffalo, N. Y., for appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, dismissing a petition, demanding $38.60—vacation pay for one week—alleged to be due under § 8(e) of the Selective Training Act of 1940.[1] The United Steelworkers of America, CIO, and Philip Murray, its president, have intervened as co-plaintiffs. The facts as stipulated were as follows. Since December 8, 1941, the respondent, a manufacturing corporation, and the United Steelworkers of America, CIO, had been parties to a series of collective bargaining agreements, one of which was in force in the year 1946. The petitioner, Dwyer, a member of the union, had, from July 21, 1941, been in the employ of the respondent "as a stamping operator"; on April 16, 1943, he enlisted in the United States Army; he was honorably discharged on December 20, 1945; and within ninety days thereafter, that is, on January 7, 1946, he was "restored" to his former "position." He demanded one week's vacation pay which Article VII of the union contract gave to all those "in the employ" of the company for twenty-six weeks before July 1, 1946, but the respondent refused the demand; hence the action. The only parts of the contract contained in the record we quote in the margin.[2] The respondent's position is that the word "employ" as used in § 1 of Article VII means only "time worked"; and in support of this it relies upon the last two sentences of the section, which speak of "employees

---

[1] § 308(e) Title 50, War Appendix, U.S. C.A.

[2] "Article V * * *

"Seniority

"4) Continuous service is considered broken by:

"Twenty-four (24) consecutive months of unemployment due to any cause shall terminate service.

"Resignation by the employee.

"Discharge of the employee by the Company for just cause.

"Failure to report for work when recalled from layoff within seven (7) days after sending notice by registered mail.

"Absence from work without notification for seven (7) consecutive days.

"5) Continuous service shall not be broken by the following incidents, nor any deductions made for time away from work because of such incidents.

"Disability because of Industrial Accident.

"Vacation as stated herein.

"Leave of absence not exceeding twenty-four (24) months because of illness or incapacity not due to industrial accident.

"Jury duty or legal summons.

"Employees entering Military or Naval Service under orders terminated by Honorable Discharge will be considered as on leave of absence.

"On expiration of such leave of absence employee will be taken back at former position and Seniority or one of like status and pay provided the Corporation's circumstances have not so changed as to make it impossible to do so and if qualified to perform his duties and applies for reemployment within the time specified by the Selective Service Act.

"Absence with consent of the Company not exceeding thirty (30) days.

"Reduction of force or layoff not exceeding twenty-four (24) months.

"During any layoff the employee shall

who are working," and of a past period, during which the men were on strike, as one "to be considered time worked." The judge took this view and dismissed the complaint.

Subdivision (b) of § 308[3] presupposes that a discharged veteran, who "leaves a position * * * in the employ of an employer," shall not be deemed to have left his "employ." The language is (subsection B): "if such position was in the employ of a private employer, such employer shall restore such person to such position"; it is the "position," not the "employ," to which the veteran is to be "restored." In confirmation of this is the language of subdivision (c) that a veteran so "restored to a position * * * shall be considered as having been on furlough or leave of absence," for an employee "on furlough or leave of absence" is still in his employer's "employ." Nevertheless, subdivision (c) does recognize that by entering the Army the veteran leaves his "position," and that he is entitled only to such "benefits" as are "offered by the employer pursuant to established rules or practices relating to employees on furlough or leave of absence." Hence, although it was unlawful to attempt by contract to provide that a veteran should be deemed not to be "in the employ" of the company while he was serving in the Army, it was not unlawful to deny him vacation, unless it was an "established rule of the company" to give vacation to those who were on "leave of absence."

Turning then to the contract, although § 1 of Article VII gives vacation pay to "each employee who prior to July 1, 1946, has been in the employ of the company for at least twenty-six (26) weeks," it nowhere even intimates that the prescribed period may include any part of the time during which the employee has been "on leave of absence"; and there is not the least antecedent reason to ascribe such a purpose to the parties. Indeed, a priori it would seem highly improbable that they should have thought a man "on leave of absence" entitled to a vacation; for vacations ordinarily presuppose relief or release from work. Be that as it may, it was an essential element of the case that the company have a rule or practice treating employees "on leave of absence" as entitled to include their leave within the twenty-six weeks, and it was not proved. Perhaps indeed, the respondent's position gets some faint support from the fact that it was thought necessary to provide especially that the out-of-work period of the strike should count as "time worked."

If it appeared elsewhere in the contract that the parties had intended all employees "on leave of absence" to be entitled to include their leave in the computation of their right to vacation, the petitioner would be right in invoking subdivision .c. There is nothing of the kind. Apparently he supposes that §§ 4 and 5 of Article V have that meaning; if so, he is wrong. The article relates only to rights of seniority, and we

report to the Employment Department at least once each calendar month either in person or by letter.

"Names of employees failing to report during a calendar month will be submitted to the Union Committee for their investigation.

"The Union Committee shall be allowed two weeks from date of receiving list of names to investigate and make final report to Management.

"Failure to report is deemed an interruption of an employee's continuous service.

"Discharge for cause if employee so discharged is re-instated within ninety (90) days after discharge."

Article VII

Vacations

"1) Each employee who prior to July 1, 1946, who has been in the employ of the company for at least twenty-six (26) weeks shall receive during such year one week's vacation consisting of 44 hours' pay and every employee who has been in the employ of the company for five or more years shall receive two weeks' pay at the rate of 88 hours. Those employees who are working more than 44 hours per week during the period March 13, 1946 to June 30, 1946 shall receive that equivalent as their vacation pay period. Duration of the strike from January 21, 1946 to March 13, 1946 is to be considered time worked."

[3] Title 50, War Appendix, U.S.C.A.

should have no warrant for extending it in any way to cover vacations; obviously the considerations which might make it proper that service in the Army should not affect a man's seniority are utterly different from those which should count in computing vacations. Indeed, the statute expressly secured him his seniority, and the provision in § 5 of Article V was unnecessary.

Judgment affirmed.