# DOUGHERTY v. GENERAL MOTORS CORPORATION.

## No. 9785.

United States Court of Appeals
Third Circuit.

Argued Feb. 10, 1949.

Decided Aug. 8, 1949.

Edward V. Ryan, Asst. U. S. Atty., Newark, N.J. (Alfred E. Modarelli, U. S. Atty., Newark, N.J., on the brief), for appellant.

Thomas L. Morrissey, Jersey City, N. J. (Carpenter, Gilmour & Dwyer, Jersey City, N. J., John Backes, New York City, Patrick A. Dwyer, Jersey City, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

We are asked to decide whether, under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 308, and of the union contracts here involved, a reemployed serviceman was entitled to vacation pay for the year of his return. Like the district court, we hold that he was not.

Virtually all the facts were stipulated. In October, 1938, Dougherty began working for, and remained an active employee of, General Motors Corporation (hereinafter referred to as "General Motors") until his induction into the United States Army on January 30, 1943.[1] Honorably discharged in April, 1946, he made timely application for restoration, and did resume work with General Motors on June 3, 1946.

When Dougherty was inducted, the 1942 contract then in effect between General Motors and the union of which he was a member contained four paragraphs governing the allowance of vacation pay. Identifiable by number as 110, 110a, 110b, and 110c, those paragraphs, in so far as is here material, set forth that "for the year 1942" each employee with one year of seniority would receive forty hours of pay, and each with five years of seniority would be given eighty hours of pay. The amount of such pay was determined by multiplying 40 or 80, whichever applicable, by the rate of pay per hour which the employee was earning on July 1, 1942. It was further provided that the employee had to be working on July 1, 1942, or had to meet other standards.[2] Dougherty did receive forty hours of vacation pay before his induction, so that he had received all vacation allowances "which had accrued and to which he was entitled up to the time of his entry into" the Army.

Had the vacation pay provision of the 1942 contract been continued without change so as to be in effect in 1946, Dougherty doubtless would have been granted vacation pay for that year; for he was working for General Motors on July 1, 1946, had a rate of pay on that day, and possessed the necessary length of service. The contracts subsequent to 1942, however, did embody changes in the vacation pay sections, including paragraph 110, our primary concern in this case. Thus, the National War Labor Board in 1943 approved by directive an amendment to the paragraph, by which 48 hours of vacation pay instead of 40 were granted; the union and General Motors further amended it in 1944 so that the eligibility of an employee depended upon his working "during the pay period beginning June 26, 1944 and ending July 2, 1944 in any General Motors Plant," rather than his working on the single day July 1; and substantially the same provision was retained in 1945.

In 1946, another collective bargaining agreement was made, in which this vacation paragraph again was altered and renumbered as 151. The new standards for vacation pay, as far as they are here relevant, were: (a) at least one year of seniority by July 1, 1946; (b) work during the pay period of June 24–June 30, 1946; and (c) compensation on the basis of graduated percentages of the gross earnings of the employee "for the period from January 1, 1945 to December 31, 1945."[3] Satisfying the requirements listed above as (a) and (b), Dougherty was an "eligible" recipient; but, since Dougherty had no gross earnings as an employee of General Motors in 1945, General Motors took the position that, the stated percentage of zero being zero, Dougherty was entitled to nothing. We are not unaware that, since few veterans were restored to their positions with General Motors until the closing months of 1945 at the earliest, the interpretation of the contract which General Motors espouses and the district court adopted means that veterans restored to duty with that company receive little, if any, vacation pay for the year 1946.

---

[1] For about four months early in 1942, however—a conversion period—Dougherty was one of those included in a general layoff.

[2] Since Dougherty was working on July 1, 1942, we need not elaborate on the other modes of attaining eligibility.

[3] The percentages were: 1 to 3 years of seniority, 2%; 3 to 5 years, 3%; 5 years or more, 4½%.

The background for the changes made in the 1946 contract does not appear in the stipulation of facts; and General Motors, apparently under the impression that such statements might be detrimental to its position, has objected to the notation in Dougherty's brief that the reason for basing 1946 payments upon 1945 earnings was "to eliminate the 1946 portion of a strike period when all employees had no earnings." We do not see how this statement could affect General Motors adversely, for the fact then becomes most apparent that, because of the strike, the contracting parties, rather than discriminating against veterans, were attempting to set up a fair standard for determining the vacation pay of employees. Be that as it may, Dougherty makes no allegation that such discrimination was intended, and in fact he affirmatively states that the situation of returning veterans "apparently was not considered." Dougherty believes that, because of the oversight, as to veterans like him the critical paragraph of the 1946 contract should be found illegal or, in the alternative, inapplicable.

In short, because the 1946 contract unfortunately failed to include a special provision for returning veterans, we are asked to carve an exception for them although we have no reason to believe that the bargaining agents of either the union or General Motors sought or contemplated additional restriction of the veterans' vacation benefits. Once we recognize that the 1946 contract was one honestly endeavoring to establish a fair standard for the employees, we are impelled to the same kind of conclusion as that reached by the Supreme Court of the United States in Aeronautical Indus. Dist. Lodge 727 v. Campbell, 69 S.Ct. 1287. Just as the veteran employees of Lockheed could not legally disturb a bona fide contractual provision granting top seniority to union chairmen, so Dougherty cannot gain legal relief from a provision which was intended to apply to veterans and non-veterans alike and which was not "a skillful device of hostility to veterans." Aeronautical Lodge v. Campbell, supra, page 1291 of 69 S.Ct.

The circumstances of the case at bar are quite different from those which we found in MacLaughlin v. Union Switch & Signal Co., 3 Cir., 1948, 166 F.2d 46, 50, in support of granting certain vacation pay demands of those employees. First, it must be noted that the employer in the MacLaughlin case had denied the restored veterans vacation pay for both the year of departure and the year of return, while Dougherty has been given vacation pay for the year he worked prior to induction. Also, in the MacLaughlin case, by the provisions of the union contract, the employee literally and factually had earned vacation pay for one year, but the employer sought to avoid any payment by asserting as a technical objection that the contract required the claiming of the pay in the "calendar year in which allowed" or "current calendar year." We pointed out, however, that the Selective Training & Service Act of 1940 could be applied to this language without disturbing the intent or effect, merely by tolling the running of the "calendar year" as to veterans. In the case at bar, on the other hand, we find no language in the 1946 contract susceptible to like interpretation. Thus, not only are the equities of Dougherty different from those of the electrical employees, but also the General Motors 1946 contract does not afford similar leeway of interpretation. In fact, the request that some standard of computation different from that specified in the 1946 contract be here adopted is not unlike that which we rejected in denying the electrical employees two vacation payments when only one was earned in active employment. See MacLaughlin v. Union Switch & Signal Co., supra, 166 F.2d at page 50.

It is clear, therefore, that the 1946 vacation pay provisions cannot be declared illegal as to Dougherty simply because their effect is to deny him—and any other General Motors employee, veteran or non-veteran, who had no 1945 gross earnings—1946 vacation pay. When we recall that vacation pay is calculated to grant relief from, and compensation for, work already performed, we cannot deem a provision unreasonable which bases the computation

of benefits upon that factor and which has no anti-veteran objective. See Siaskiewicz v. General Electric Co., 2 Cir., 1948, 166 F.2d 463, and Dwyer v. Crosby Co., 2 Cir., 1948, 167 F.2d 567. However desirable and feasible some modification of the provision by the parties themselves might have been, we cannot impose as a legal requirement a vacation provision other than that on which the bargainers agreed, as long as the intent and operation do not place veterans in a position inferior to that of non-veterans on leave of absence.

For the reasons stated, the order of the district court must be affirmed.