## FOSTER et al. v. GENERAL MOTORS CORP.

### No. 10423.

United States Court of Appeals
Seventh Circuit.

Argued Sept. 20, 1951.

Decided Oct. 17, 1951.

Harry M. Leet, Cincinnati, Ohio, for appellant.

Hubert Hickam, Thomas M. Scanlon, Indianapolis, Ind., Jerry P. Belknap, Indianapolis, Ind. (Barnes, Hickan, Pantzer, & Boyd, Indianapolis, Ind., of counsel), for defendant-appellee.

Before MAJOR, Chief Judge, DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This action was brought by three named individual veterans on behalf of themselves and all other similarly situated under § 8 of the Selective Service and Training Act of 1940, as amended, 50 U.S.C.A. Appen-

dix, § 308 (hereinafter referred to as the Act), to recover from the defendant, General Motors Corporation, vacation pay for the year 1946. The named plaintiffs while employees of the defendant entered military service in 1942, and were granted a leave of absence for the period of such service. They were honorably discharged in the latter part of the year 1945, or the first part of the year 1946, and were each shortly thereafter reemployed by the defendant. Neither plaintiffs' complaint nor defendant's answer was verified. Plaintiffs proposed certain interrogatories which were answered by the defendant.. Thereupon, plaintiffs proposed additional interrogatories, to which objections were filed by defendant. Prior to a ruling on such objections, defendant moved for a summary judgment and in support thereof submitted the affidavits of two of its officials, namely, K. H. Hoffman, personnel director of its Allison Division, and Louis G. Seaton, defendant's representative in the negotiation and making of labor contracts with its employees at the Allison plant. Plaintiffs offered no counter-affidavits. The district court, on March 22, 1951, entered an order sustaining defendant's motion for a summary judgment.. From this order the appeal comes to this court.

In 1946, and for several years prior thereto, the duly certified collective bargaining agent for defendant's employees, including the plaintiffs, was the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, affiliated with the Congress of Industrial Organizations (hereinafter referred to as the union). From the year 1942 to 1947, both inclusive, vacation allowance for hourly-rated employees was the subject of annual negotiations and agreements between the defendant and the union. The vacation provision of each annual agreement is set forth in Seaton's affidavit. Generally, to qualify for a vacation allowance prior to 1946, the employee must have been working for defendant at least one year, i. e., have one year's seniority; and he must have still been working for the defendant at the end of the vacation year, July 1 to June 30, or laid off subsequent to May 1.

If not so working at the end of the year and not so laid off, he could qualify only if he had worked 75% of the work weeks during the vacation year. No provision was made in any of such contracts for vacation pay for those employees on a leave of absence.

In the fall of 1945, in accordance with the annual practice, the defendant and the union commenced negotiations relative to a new collective bargaining agreement, including provisions for a vacation allowance for 1946. While these negotiations were in progress, the union called a strike, which commenced on November 1, 1945, and lasted until March 13, 1946. Said negotiations continued throughout the strike period. The position of the defendant and the union as well as the proposals made by each and considered during such negotiations are set forth in detail in Seaton's affidavit. As a result of such negotiations, an agreement was executed on March 13, 1946 (the date of the strike termination). We think it unnecessary to set forth this agreement in detail. It is sufficient to state that the gross earnings of the employees for the year 1945 were provided as the basis for determining the amount of vacation pay to be received for the year 1946. In contrast, each of the other annual contracts provided that the gross earnings for the then current year be used as the basis for determining the amount of vacation pay for that year. (The facts upon which this change was predicated are set forth in Seaton's affidavit and will be subsequently referred to.)

The plaintiffs are all veterans and hourly-rated employees of the defendant. Each of them left his position of employment with defendant to enter military service, applied seasonably for reinstatement to his job and has otherwise met the requirements for reinstatement under § 8 of the Act. Each admittedly was reinstated in accordance with the Act unless it be, as plaintiffs contend, that they were entitled to vacation pay for the year 1946 (the year of their return from service), which the defendant refused to pay.

The adjudicated cases militate strongly against the position sought to be maintained by the plaintiffs. The most striking case is that of Dougherty v. General Motors Cor-

poration, 2 Cir., 176 F.2d 561. There, the plaintiff's situation was exactly the same as the named plaintiffs in the instant case. Dougherty was an hourly-rated employee of the defendant in its plant located at Linden, New Jersey, from October 31, 1938 to January 30, 1943, when he was granted a military leave of absence and entered the military service of the United States. Upon being honorably discharged and having satisfied all reinstatement requirements of the Act, he was reinstated in the same capacity, with the same seniority, status and pay, as were the plaintiffs here. He did not receive pay from defendant during 1945 and, therefore, although he fully complied with all other requirements for vacation allowance in 1946, he received no such allowance. He was a member of the same union and his claim, of course, was predicated upon the same Act and involved the same 1946 agreement entered into by the union and the defendant. The plaintiff in that case, as well as those here, admitted he was not entitled to vacation pay, under the terms of the 1946 agreement, but there, as here, it was in effect contended that the agreement was in derogation of plaintiff's rights as guaranteed by the Act. In response to this argument, the court stated 176 F.2d at page 563: "It is clear, therefore, that the 1946 vacation pay provisions cannot be declared illegal as to Dougherty simply because their effect is to deny him—and any other General Motors employee, veteran or non-veteran, who had no 1945 gross earnings—1946 vacation pay. When we recall that vacation pay is calculated to grant relief from, and compensation for, work already performed, we cannot deem a provision unreasonable which bases the computation of benefits upon that factor and which has no anti-veteran objective."

Thus, the Dougherty case recognized and sustained the validity of the agreement between the union and the defendant and held that it did not constitute an impairment of the plaintiff's rights as provided in the Act. Other courts have taken the same view, both as to vacation pay and as to other matters embodied in agreements between the union and the employer. In Seattle Star, Inc., et al. v. Randolph et al.,

9 Cir., 168 F.2d 274, it was held, pursuant to the terms of an agreement between the union and the employer, that a returning veteran was not entitled to count service time in determining severance pay. In so deciding, the court stated, 168 F.2d at page 276: "It is argued that unless the contract be so interpreted as to permit appellees' time in the armed services to be considered as full time employment, said contract conflicts with § 8(c) of the Selective Service and Training Act and is against public policy. Such a contention is diametrically opposed to the plain reading of § 8(c) and gives no effect to the requirement that the determination shall be made on the basis of the rules applicable at the time of induction to those on furlough or leave of absence."

In Dwyer v. Crosby Co., 2 Cir., 167 F.2d 567, a contract between the employer and the union provided for vacation pay to each employee who, prior to July 1, 1946, had been employed for at least 26 weeks. The contract was silent as to whether time spent by a veteran in military service and while on leave of absence could be counted as time employed. The veteran-plaintiff contended that such time should be so counted. The court in a decision adverse to the plaintiff stated, 167 F.2d at page 569: "* * * it was not unlawful to deny him vacation, unless it was an 'established rule of the company' to give vacation to those who were on 'leave of absence.'" The court further stated (same page): "If it appeared elsewhere in the contract that the parties had intended all employees 'on leave of absence' to be entitled to include their leave in the computation of their right to vacation, the petitioner would be right in invoking subdivision (c). There is nothing of the kind." And the court, in distinguishing between the protection afforded a veteran as to seniority and vacation pay, stated (following page): "* * * obviously the considerations which might make it proper that service in the Army should not affect a man's seniority are utterly different from those which should count in computing vacations."

In Siaskiewicz et al. v. General Electric Co., 2 Cir., 166 F.2d 463, the court also

gave effect to the provisions of a contract between the union and the employer which provided in substance that employees not registered on the payroll were not entitled to a vacation. The plaintiff was in military service and, therefore, not on the payroll. It was contended that the contract provision was in violation of his rights under the Act, or, as stated by the court, 166 F.2d at page 465: "The real essence of appellants' argument is not that they have been deprived of seniority, but that they are being discriminated against as veterans in a manner prohibited by law." As pointed out by the court, plaintiffs' contention was that in the absence of their war service they would have had a payroll status and would have been entitled to vacation pay, and that to deny such pay was to discriminate against them because of their war service. The court held that a returning veteran was entitled to participate only in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted. In so doing, the court stated, 166 F.2d at page 465: "Since vacation rights are not pay unless they are for work actually done, and since they are not merely a perquisite of seniority, they must fall under the heading of 'other benefits.' Hence, under the language of the Act, appellants must be treated like non-veteran employees on furlough or leave of absence. But non-veteran employees of appellee who were on leave of absence for more than half a year would not be entitled to vacation pay for that year. Therefore, appellants are not so entitled. To grant them such pay would be to discriminate in favor of them as veterans, and against non-veteran employees."

In Aeronautical Industrial District Lodge 727 v. Campbell et al., 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513, the court was called upon to reconcile the claimed seniority rights of a returning veteran under the Act with those incorporated in an agreement entered into between the union and the employer while the veteran was on leave of absence. Such agreement had been changed so as to provide top seniority for certain union chairmen. Work became slack and the veteran was laid off. The veteran, who would have had seniority greater than such chairmen in the absence of such agreement, contended that his lay-off was in violation of the Act. The court denied the contention and sustained the agreement. In so doing, it stated, 337 U.S. at page 527, 69 S.Ct. at page 1290: "The agreements made by the Union with Lockheed represent familiar developments in the process of collective bargaining which the Selective Service Act presupposes and in the context of which it must be placed. Kirk's rights, including seniority, before he entered the service were derived from the agreement of 1941. So, likewise, were his rights, including seniority, as an employee on furlough defined by the agreement of 1945, inasmuch as that agreement in no wise disadvantaged his position because he was in the military service." And the court, 337 U.S. at page 528, 69 S.Ct. at page 1291 stated: "A provision for the retention of union chairmen beyond the routine requirements of seniority is not at all uncommon and surely ought not to be deemed arbitrary or discriminatory. The fact that it may involve, as in Kirk's case, the temporary layoff of a veteran while a nonveteran chairman with less time at the plant is retained, is wholly unrelated to the veteran's absence in the service."

■ Thus, it appears settled that vacation pay is not a right guaranteed to a returning veteran by the Act. Such right, if he has any, is determinable in accordance with the terms of a collective bargaining agreement. We think this would not be disputed by the plaintiffs; in fact, it is conceded that the 1946 agreement on its face precludes recovery. However, it is argued that such agreement was not made in good faith and that in operation and effect it discriminated against returning veterans. This argument appears to be predicated mainly upon the provision which makes the earnings for 1945 the basis for vacation payments, and inasmuch as plaintiffs had no earnings for that year any basis upon which they might calculate vacation pay for 1946 was eliminated. It should be noted, however, that this provi-

sion applied with equal force to all employees who were on a furlough or leave of absence, whether they were veterans or non-veterans. Vacation pay, so far as we are aware, is not an incident to employment but is a right which flows entirely from an agreement between the employer and the employees or the union as their representative. Not only does the 1946 agreement fail to provide vacation pay for those on a furlough or leave of absence, but the same is true as to each of the agreements previously or subsequently entered into between defendant and the union, including the 1942 agreement, the year plaintiffs were inducted into military service.

■ Plaintiffs contend that they were entitled to a hearing on this so-called issue of discrimination and bad faith and that the district court, therefore, erred in allowing defendant's motion for a summary judgment—in other words, there existed a genuine issue as to a material fact which precluded the entry of a summary judgment. Obviously, this contention must be resolved on the record as made, and when viewed in this light plaintiffs are in a poor position to contend that there was before the court such an issue. Some of such issues here urged were raised only in the brief which the plaintiffs filed in opposition to defendant's motion for summary judgment, others were raised for the first time in their briefs before this court.

As already noted, the record presented to the district court consisted only of plaintiffs' complaint, defendant's answer, both unverified, and defendant's motion for summary judgment, together with affidavits in support thereof. We have examined these supporting affidavits and we are satisfied that the statements of fact contained therein relative to the negotiations which were carried on between the defendant and the union and which culminated in the agreement under attack completely annihilate plaintiffs' contention that such agreement was made in bad faith or that it was discriminatory as to plaintiffs and other veterans in the sense that it violated the Act or that it made any distinction between veterans and non-veterans who were on a furlough or leave of absence. A strike

had long been in progress at the time such negotiations were commenced and carried on. Both the defendant and the union were charged by law, National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to bargain in good faith in an attempt to reach a satisfactory agreement. Defendant made numerous proposals which, if they had been accepted by the union, would perhaps have been more favorable to employees on a furlough or leave of absence. Such proposals, however, were rejected by the union.

Certainly there is no basis on the undisputed facts to argue that the defendant did not bargain in good faith, and the fact that the union rejected the proposals as made by the defendant and insisted on a proposal, subsequently agreed to by the defendant, by which the earnings for 1945 were made the basis for vacation pay does not show that the union acted in bad faith. And this is so notwithstanding that such proposal was less favorable to employees on a furlough or leave of absence than might have otherwise been obtained. After all, a union as an authorized bargaining agent no doubt is legitimately interested in obtaining the best possible contract for its members as a whole, and with numerous diversified interests among its members, especially, where its membership is large, there is nothing strange or unnatural if some segments of its membership are placed at disadvantage when compared with others. The strike had been in progress for 113 days, and it evidently was to the interest of both the defendant and its employees that it be terminated. The contention that the agreement was not reached in good faith or that it was made for the purpose or with the intent of discriminating against veterans in the service finds no factual support in the record. It is based wholly on surmise, suspicion and conjecture.

■ Moreover, under the state of the record we doubt if plaintiffs are in any position to raise any question of bad faith or discrimination. The excuse offered by the plaintiffs for failure to file any affidavit in response to those in support of the motion is that they lacked information as to what took place during the bargaining negotia-

tions and that such was peculiarly within the knowledge of the defendant. There are two answers to that excuse: first, that the union as the bargaining agent for the employees, including the plaintiffs, presumably had the same information on this score as did the defendant, and second, that Fed.Rules Civ.Proc. rule 56(f), 28 U.S. C.A., provides: *"When affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Plaintiffs made no attempt to comply with this requirement, which raises a presumption, so we think, that they were unwilling to put in affidavit form a statement to the effect that the agreement was made in bad faith or that it was discriminatory. Under such circumstances, the facts in defendant's affidavits must be taken as true. Stahly, Inc. v. M. H. Jabobs Co. et al., 7 Cir., 183 F.2d 914, 916, certiorari denied 340 U.S. 896, 71 S.Ct. 239; Gray et al. v. Amerada Petroleum Corp. et al., 5 Cir., 145 F.2d 730. See also Griffin v. Griffin, 327 U.S. 220, 235, 66 S.Ct. 556, 90 L.Ed. 635.

We have not overlooked plaintiffs' contention that even though no opposing affidavits were filed by them, an issue of fact was raised by the allegations of their complaint. We think this contention is without merit. There is no allegation in the complaint that the agreement between the defendant and the union was made in bad faith and no allegations of fact which, in our view, could form the basis for any legal discrimination. The nearest approach is the allegation, "By this device, nearly every veteran returning to General Motors' employ was deprived of vacation pay in 1946 because of his prior absence in military service," and that plaintiffs "were the victims of a unique rule discriminating against employees in the military service." "By this device" in the first quote and "a unique rule" in the second quote refer to the agreement by which the earnings for 1945 were used as the basis for vacation pay in the year 1946. These allegations, in our view, raise no genuine issue as to a material fact. We suppose that none would disagree but that plaintiffs and other veterans were in numerous respects placed at a disadvantage when their lot is compared with that of their fellow employees who remained at home. Such disadvantages, however, are inherent in military service, and though characterized as discriminatory are not discriminations for which the law affords a remedy. The discrimination, if such it be, asserted by the plaintiffs in the instant matter is not of the character which the Act is designed to protect.

Plaintiffs advance other arguments in support of their contention that the motion for summary judgment was improperly granted, which we find without merit.

In the judgment appealed from, the court awarded costs to be recovered from the plaintiffs. Obviously, under § 8(e) of the Act, this was erroneous and the defendant so concedes. Thus, the judgment is modified by eliminating the requirement as to the payment of costs and, as so modified, the judgment is affirmed.