Fidel Alonso Caiñas, Plaintiff and Appellee, *v.* Board of
Medical Examiners of Puerto Rico, Defendant and
Appellant.

No. 10659.   Argued October 1, 1952.—Decided December 8, 1952.

*Víctor Gutiérrez Franqui, Attorney General,* and *Edgar S. Belaval, Assistant Attorney General,* for appellant. *S. L. Lagarde Garcés* and *R. Hernández Matos,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The former District Court of Puerto Rico, San Juan Section, after having denied a motion to dismiss, rendered a summary judgment granting the petition for a writ of mandamus filed by Dr. Fidel Alonso Caiñas against the Board of Medical Examiners, which was created by Act No. 22 of April 22, 1931, (Sess. Laws, p. 204).[1] It ordered said Board and its President, A. Oliveras Guerra and its Secretary, Luis Cueto Coll, or in their stead, those persons that had substituted those officials in their positions, to issue to plaintiff a permanent license authorizing him to practice freely the profession of physician-surgeon in this island.

According to the pleadings and to the documents presented, the plaintiff, Cuban by birth, holds a diploma of physician-surgeon issued in 1926 by the University of Havana, which is an accredited university registered by the Board of Medical Examiners of Puerto Rico. From January 1927 until January 1942 he practiced his profession in his native country. In April 1942 he came to Puerto Rico and since then has been practicing said profession in this island under a provisional license,[2] which was issued to him by the defendant Board to practice in the branch of public charities, after having passed the Board's examination. He became

---

[1] Consistent with § 4 of the already mentioned Act, said Board "shall have charge of authorizing in the island of Puerto Rico, in accordance with the provisions of this Act, the practice of the professions of medicine and surgery, ..."

[2] The issuance of said provisional licenses to foreign doctors was authorized by Act No. 26 of 1942 (Sess. Laws, p. 396), as amended by Act No. 13 of November 23, 1942 (Spec. Sess. Laws, p. 42). This Act was repealed by Act No. 383 of April 22, 1946 (Sess. Laws, p. 1036).

an American citizen by naturalization on the 15th of August 1949. After acquiring citizenship, on December 5, 1949 he petitioned the Board for a permanent license. The Board denied it on February 21, 1950. In view of said denial the plaintiff brought this petition for mandamus, which the former District Court issued.

From that judgment the defendant, Board of Medical Examiners, appealed alleging that the court *a quo* committed three errors, to wit:

"1. The District Court erred in not granting the motion to dismiss prayed for by the defendant.

"2. The District Court erred in entering a summary judgment in this case.

"3. The District Court erred in entering summary judgment sustaining the petition."

In his answer the appellee contends that this Court has not acquired jurisdiction because the defendant has not affixed to the notice of appeal the internal revenue stamp for the amount of $2.00 as required by Act No. 17 of March 11, 1915 (Sess. Laws, p. 45), and prays that the appeal be dismissed on that ground. His contention is groundless. In *Gómez* v. *Board of Examiners*, 40 P.R.R. 635, the same contention was raised and was dismissed by this Court, stating on page 636 as follows:

"The appellant board was created by Act No. 31 of 1927 to issue licenses to persons authorized to practice the professions of engineering, architecture, or surveying; the members of the board are appointed by the Governor of Porto Rico with the advice and consent of the Insular Senate; the board is entitled to the services of the Attorney General of Porto Rico in connection with its business; it has an official seal for use on all certificates and licenses issued by it; it has power to collect certain fees; all moneys received by it must be deposited in the Insular Treasury, in a special fund; and all its expenses must be paid out of said fund on voucher of the Auditor of Porto Rico.

"The foregoing shows that the said board is an entity of the Government of Porto Rico and that, therefore, it is not required to cancel any internal revenue stamp as fees, since The People of Porto Rico is not bound to use such stamps."

The foregoing applies likewise to the Board of Medical Examiners. Said Board was created by Act No. 22 of April 22, 1931 (Sess. Laws, p. 204), and is empowered to authorize in the Island the practice of the professions of physician and surgeon, of osteopath, and of their allied professions, being also authorized to issue licenses for the professions of physician-surgeon, osteopath, minor surgeon and midwife (§ 4 of the Act); the Board is appointed by the Governor with the advice and consent of the Senate of Puerto Rico (§ 1 of the Act); is bound to submit to the Governor an annual report of its work and an account of receipts and expenditures (§ 6 of the Act); is entitled to the services of the Attorney General in connection with their official acts (§ § 14 and 23); uses an official seal for the certificates and licenses which it issues (§ 2); has a right to collect fees (§ 12); deposits the funds collected in the Insular Treasury in a special fund and its expenses are paid out of that fund, if it be sufficient, otherwise the deficit shall be covered by the Treasurer of Puerto Rico with any fund in the Insular Treasury, not otherwise appropriated. (Section 13.)

In our judgment, it is evident that the Board of Medical Examiners is an entity of the government and therefore, it is not required to pay internal revenue stamps.

We, therefore, assume jurisdiction on appeal and shall proceed to examine the errors assigned by appellant.

Appellant contends that the complaint fails to state facts sufficient to constitute a cause of action and that this being so the court a quo should have dismissed the complaint. Rule 12b (6) of the Rules of Civil Procedure. The alleged absence of a cause of action is predicated in the fact that the complaint was brought directly against the Board of Medical Examiners of Puerto Rico as such, without spe-

cifying or mentioning the persons that composed it, alleging that as a Board, it lacks the capacity to sue or be sued and that the ones to be sued are the persons that compose the Board. The appellant's contention is groundless. Under the express terms of our statute, the writ of mandamus may be brought against a Board as such. Section 2 of the Act Establishing the Writ of Mandamus (§ 650 of the Code of Civil Procedure) provides that "The writ of mandamus may be issued ... to any inferior tribunal, corporation, board or person to compel the performance of any act which the law especially enjoins as a duty resulting from an office, trust or station; ..." There is no doubt that it is the Board of Medical Examiners as such the one that has the duty to issue licenses of physician-surgeon. Section 14 of the Act establishing the Board, after enumerating the requisites that must be fulfilled by all persons wishing to obtain a license of physician-surgeon, provides that "When the preceding requirements have been fulfilled, ... an after he passes the examination prescribed in clause 2 of this section, *the Board shall issue to the interested person a license* authorizing him to practice freely the profession of medicine and surgery... in the Island of Puerto Rico." (Italics ours.) This is, therefore, a ministerial duty of the Board, independently of who its members are. The writ can be issued against the Board as such because the writ of *mandamus* does not abate by the fact that there has been a change in the personnel of the Board. *Murphy* v. *Utter*, 186 U. S. 95; Annotation 102 A.L.R. 943, 962. As stated in the case of *Middle States Utilities Co.* v. *City of Osceola*, 1 N.W. 2d 643, "These decisions proceed on the theory that the real party in interest is the municipality or other public body whom the board represents and not the individuals who happen to be incumbents when the duty is sought to be enforced; that to say otherwise is a sacrifice of substance to form." Technically speaking, the only proper and necessary party respondent is the party upon whom the duty rests to perform the act

sought. Ferris, *Extraordinary Legal Remedies*, § 234, p. 276. Furthermore, the Board in question has been sued as such in two previous occasions. *Sicard* v. *Board of Medical Examiners*, 67 P.R.R. 318 and *Board of Medical Examiners* v. *District Court*, 64 P.R.R. 595. While in those cases the contention now under consideration was not raised, the action of the court in deciding them must be deemed and taken as an approval of the form of the proceeding. *Cf. Levering* v. *Board of Sup'rs.*, 112 A. 301.

The appellant argues that the complaint ought to have been dismissed by the court *a quo* because even assuming that it was not necessary to mention the persons composing the Board, it is apparent that the Board as such can not be sued as the Act creating it does not grant to it the power to sue or be sued. To hold appellant's contention would be tantamount to accepting that in a case as the one at bar, the defendant Board may refuse to comply with the duties imposed thereon by law, in violation of the rights granted by the statute to certain persons, without the courts of justice being able to enforce by writ of mandamus the performance of said duties. The practice of medicine and surgery is not a natural right to which any individual is entitled but rather subordinate to the exercise of the police power of the state to preserve and to protect the health of the community. *Infante* v. *Board of Medical Examiners*, 43 P.R.R. 311; *Lambert* v. *Yellowley*, 272 U. S. 581, 596; *Douglas* v. *Noble*, 261 U. S. 165. For that reason the Legislature can reasonably regulate such practice. *People* v. *Witte*, 146 N. E. 178; *State* v. *Armstrong*, 255 Pac. 491; *State* v. *Borah*, 76 P. 2d 757. By Act No. 22 of April 22, 1931 our Legislature regulated the practice of medicine and surgery fixing the requirements that an applicant to the practice of said profession must fulfill and authorize the Board of Medical Examiners to issue the license once those requirements have been fulfilled. In the exercise of that power the Board lacks discretion to deny the applicant a license after he had fulfilled the require-

ments prescribed by law. Section 14 referred to so provides, when it states that once the requirements prescribed by law have been fulfilled and the revalidation examination having been passed, "the Board *shall issue* to the interested person a license authorizing him to practice freely the profession of medicine and surgery . . ." Such language leaves no margin of discretion to be exercised by the Board, its duty being to all effects ministerial. If in said circumstances the Board refuses to issue a license, then, it is denying the applicant a right which the law grants him and mandamus lies to compel the Board to issue the same. *York* v. *State*, 197 So. 766; *Kahn* v. *State Board of Examiners of Optometry*, 161 Atl. 12; *State* v. *Bartlett*, 32 A. 2d 58; *State* v. *Adcock*, 124 S. W. 1103.

██ Finally, the appellant contends that the petition should have been dismissed because the plaintiff had incurred in laches. The defense of laches can be raised in a mandamus proceeding. *Rivera* v. *Pons, Commissioner*, 66 P.R.R. 877. However, the jurisprudence is almost unanimous in that, for the defense of laches to lie, the delay in the exercise of the right must have caused prejudice to the defendant. *Jiménez* v. *Pension Board*, 61 P.R.R. 167 and cases cited on page 174. The defendant Board has made no such showing of prejudice.

██ The defendant also contends that the petition should have been dismissed because plaintiff has not shown that he is entitled to have his temporary license changed for a permanent one, inasmuch as the law does not authorize such a change. However, it may readily be seen that this is not a petition for a change in the character of a license but rather one requesting the issuance of a license. Appellant's contention cannot be sustained.

██ The second and third errors can be considered jointly. In reality, once the petition was answered, there remained no relevant fact in controversy. However, the appellant contends to the contrary and avers that from the "allegations there appears a substantial question of fact:

whether or not the plaintiff passed the revalidation examination required by law." The defendant rests his contention in the fact that the defendant Board denied that the plaintiff had passed the revalidation examination required by § 11 of the Act of 1931 aforesaid, and that the Board alleged instead that the examination passed by the plaintiff was "a special examination, shorter and less comprehensive than the revalidation examination given to doctors applying for a permanent license," sustaining that from the letter that the plaintiff annexed to his motion for a summary judgment "it clearly appears that the examination given to plaintiff was a special examination and not the regular examination." [3] That is really the fundamental question to be decided in this case.

---

[3] Said letter reads as follows:

GOVERNMENT OF PUERTO RICO
Board of Medical Examiners

San Juan
November 12, 1942

Dr. Fidel Alonso Caiñas,
Utuado, Puerto Rico
    Dear Sir:

    I am pleased to inform you that you passed the special examination given by the Board of Medical Examiners of Puerto Rico, pursuant to Act 26 of the current year.

    For your information here is a transcript of the grades you obtained in the different subjects:

| | |
|---|---|
| Anatomy and Histiology | 70 |
| Physiology and Hygiene | 76 |
| *Materia Médica*, Therapeutics, etc. | 81 |
| Pathology and Bacteriology | 77 |
| General Surgery | 78 |
| Obstetrics and Gynecology | 87 |
| General Medicine and Diagnosis | 92 |
| Tropical Medicine and Laboratory | 91 |
| Practical Clinic | 80 |

    In due time a provisional license will be sent to you authorizing you to render professional services in the municipality wherein you may be assigned by the Territorial Charities Board, for the period of time specified in Act 26, 1942.

Cordially yours,
(Sgd.) O. Costá Mandry

O. Costa Mandry, M. D.
Secretary-Treasurer.

As we said before, plaintiff came to Puerto Rico to practice his profession pursuant to Act No. 26 of April 10, 1942, *supra*, footnote 2, as amended by Act No. 13 of November 23, 1942, repealed by Act No. 383 of 1946, *supra*. Said Act acknowledged the problem that confronted the municipalities of the Island due to the lack of physicians to render services in the public charities and authorized to that effect the Board of Medical Examiners to issue, without fees, renewable permits to cover the period of emergency [4] to all physicians having the qualifications required in said Act. Section 4 of said Act provides that "The Board of Medical Examiners, *through the revalidation examination determined by law*, and after verifying the other points of the application, shall issue a provisional license to practice medicine and surgery in Puerto Rico, in the branch of public charities, to every physician so requesting; ..." (Italics ours.) The plaintiff herein passed the revalidation examination and a temporary license was issued to him after verification that he met the other requirements of law.[5] The defendant Board now alleges, that the revalidation examination passed by the plaintiff was a special one. In truth, we fail to see how can such allegation be made. Consistent with the express terms of the Act, before issuing the temporary license the Board of Medical Examiners had to offer

---

[4] Said period of emergency was fixed up to a year after the end of the war existing at that time.

[5] Section 3 of the same Act provides to that effect, that:

"In order to avail themselves of the provisions of this emergency Act, the physicians applying must fulfill the following requirements:

"(a) To be over twenty-one (21) years of age;

"(b) To speak the Spanish language;

"(c) To have been graduated from a college of recognized reputation;

"(d) To sign a sworn application binding himself to practice in municipal charities wherever he may be assigned by the Territorial Charities Board or to work for a year as intern in one of the hospitals of the Island of Puerto Rico to which he may be assigned by said board;

"(e) To be identified with the philosophy and purposes of democratic ideas."

the applicant "the revalidation examination as determined *by law*." (Italics ours.) That Act can be none other than Act No. 22 of 1931, *supra*. No other Act authorizes the holding of revalidation examinations for applicants to licenses of physician-surgeon. As we said in the case of *Board of Medical Examiners* v. *District Court, supra*, page 597, "We cannot agree with the Board that Act No. 26 stands alone. On the contrary, its provisions on their face assume the existence of a basic statute setting up the Board and defining its powers. Act No. 26 expands the powers of the Board in order to confront an emergency. But Act No. 26 is predicated on the theory that Act No. 22, setting up a Board, defining its powers and duties, and determining its procedure, exists. For example, Act No. 26 provides for 'examination as determined by law' of foreign physicians applying for a provisional license pursuant to Act No. 26. But what 'law' provides for such examination? We are forced back to Act No. 22 for provision therefor."

To hold the contrary would be to accept that the technical requirements provided for the provisionally licensed physicians are inferior to those that a physician who is to be permanently licensed must have. We can not believe that such was the intention of the lawmaker. See *Sicard* v. *Board of Medical Examiners, supra*. The medical services to be rendered to the community by a doctor with a provisional license as well as by a doctor with a permanent license are the same. Both require from the doctor the same basic technical knowledge. We can not assume that the lawmaker's intention was to place public charity in the hands of unprepared and inexpert physician-surgeons. Rather, it required that the applicants to said provisional licenses pass, except when they were to work as internes in a Puerto Rican hospital, the revalidation examination provided by law and, furthermore, to fulfill certain additional requirements such as to be able to speak the Spanish language, to bind themselves to practice wherever they were assigned by the Board

and to be identified with the philosophy and purposes of democratic ideas. As for the other requirements he would have to comply with, they are the same as those provided by Act No. 22 of 1931, as amended, for the issuance of a permanent license, the requirement of citizenship excluded. See *Board of Medical Examiners* v. *District Court, supra.* We conclude then, that the revalidation examination that the plaintiff passed was not a special one but the regular examination provided by law. On the other hand, the defendant has not rebutted the presumption established in subdivision 32 of § 464 of the. Code of Civil Procedure (§ 102 of the Law of Evidence), to the effect "That the law has been obeyed", but rather merely alleged that the examination passed by plaintiff was a special one, but failed to support said allegation by affidavits or any other document that might rebut the allegation of plaintiff. The defendant Board has relied in the letter sent by its secretary-treasurer to Alonso Caiñas, M.D., on November 12th, 1942 (Exhibit C of the plaintiff, copied in footnote 4 of this opinion). In the first place, designating in said letter the examination passed by the plaintiff as "special," is not decisive. Such designation implies only a conclusion. In the second place, said letter does not show positively and decisively that the said special examination did not cover all of the subjects specified in § 11 of Act No. 22 of 1931.[6] The defendant Board could have made such a showing but rather it chose to rely in the interpretation that might be given to its letter of November 12 which, as already seen, contains an "etc.", in referring the subjects passed by plaintiff, whose meaning has been left unexplained. That being so, the Board can not

---

[6] Said Section 11 reads as follows:

"Revalidation examinations for physician-surgeons shall be in writing, and under such rules as the Board may prescribe, in the following subjects: human anatomy; normal and pathological histology; physiology; bacteriology; public and private hygiene; general medicine and diagnosis; general surgery; obstetrics; gynecology; pharmacology; legal medicine and toxicology; *materia médica* and therapeutics, and tropical diseases, in addition to a practical clinical examination."

now, on appeal, allege that there was a material fact in issue. *Escalera* v. *Armenteros, ante,* p. 10; *Foster* v. *General Motors,* 191 F. 2d 907; Cert. denied 343 U. S. 906. Having reached the conclusion that the examination passed by plaintiff was the regular examination provided in the Act of 1931, and it having been proved also that plaintiff acquired American citizenship, it is evident that he meets all of the requirements [7] prescribed by the aforementioned Act of 1931, and therefore the Board of Medical Examiners of Puerto Rico lacks discretion to refuse to issue plaintiff a permanent license.

The judgment appealed from will be affirmed.

---

[7] Such requirements are enumerated in § 14 of said Act, as amended, and are the following:

"Every person wishing to obtain a license to practice the profession of medicine and surgery, or of osteopathy, in the Island of Puerto Rico, must fulfill the following requirements:

"1. To be of legal age and a citizen of the United States of America.

"2. To have passed the examinations referred to in Section 11 of this Act.

"3. In default of the preceding requirement, to have obtained a license to practice the said profession through examinations taken before the proper board in any of the states of the American Union, with which the Board of Medical Examiners may have established relations of reciprocity, as authorized in Section 9 of this Act; *Provided,* That persons aspiring to a license to be obtained through the examinations referred to in clause 2 of this Section, whose professional titles have been granted by some university that does not require a bachelor's degree or the accepted equivalent thereof, for admission to the practice of medicine, shall, in addition to the studies corresponding to the four years of an accredited high school, have passed not less than two years' work for a bachelor's degree in a college where, among other studies, courses in organic and inorganic chemistry, higher physics, advanced biology, and a foreign language are thoroughly taught.

"4. To hold a diploma or title of doctor in medicine and surgery issued by any accredited university of the United States, Puerto Rico, or a foreign country, registered by the Board of Medical Examiners and which maintains a high level in subjects appropriate to said profession.

"5. The candidate shall furnish satisfactory evidence to the Board of Medical Examiners that after graduation from medical school he has served as an interne for at least one year in a hospital approved by the Board.

"6. To practice for a minimum period of one year as physician in a municipality of the second or third class in Puerto Rico under the super-

vision of the Board of Medical Examiners of Puerto Rico, through a special license issued to that effect indicating the town where such practice is to be effected;· *Provided,* That in lieu of this requisite a physician may apply for and be admitted to examination, after two years of residence in a hospital approved by the Council of Medical Education and Hospitals of the United States or in the approved list of hospitals of the Board of Medical Examiners of Puerto Rico.

"7. Those persons who have graduated before the approval of this Act shall, in lieu of the requirement of one year's internship, be admitted upon submitting evidence of having practiced legally the profession of medicine for a period of 5 years in the United States or any other country."