**Robert E. MORTON, Plaintiff,**

v.

**GULF, MOBILE AND OHIO RAILROAD,**
a corporation, Defendant.

**No. 67 C 175(3).**

United States District Court
E. D. Missouri, E. D.

Nov. 17, 1967.

Veryl L. Riddle, U. S. Atty., W. Francis Murrell, Jim J. Shoemake, Asst. U. S. Attys., for plaintiff.

10. 41 Stat. 537 (1920), 46 U.S.C. § 761 et seq. (1958).

11. 35 Stat. 65 (1908), as amended, 45 U. S.C. § 51 et seq. (1958).

Alphonso H. Voorhees and Larry R. Marshall, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

REGAN, District Judge.

This action, brought under Section 9 of the Universal Military Training Act, 50 U.S.C., War Appendix, Section 459, seeks recovery of vacation status and vacation pay to which plaintiff is allegedly entitled. The United States Attorney is acting for plaintiff pursuant to the provisions of Section 9(d) of the Act, Section 459(d) 50 U.S.C., War App. The facts have been stipulated and as so stipulated are found by the Court.

Robert Morton was originally employed by Gulf, Mobile and Ohio Railroad Company on September 25, 1950, in the position of electrician apprentice. This position was other than temporary. On April 6, 1951, Morton left his position for the purpose of entering military service. He remained in service until his honorable discharge from the United States Air Force on April 13, 1955. Upon timely application, he was reemployed by Gulf, Mobile and Ohio on April 18, 1955, and thereafter remained continuously in defendant's employ.

Gulf, Mobile and Ohio is a party to a collective bargaining agreement dated December 17, 1941, which makes provision for vacations with pay to be granted its employees on the conditions therein set forth. Amendments to this agreement were thereafter entered into on August 21, 1954, August 19, 1960 and November 21, 1964. Both parties to this action were at all times subject to these vacation agreements. The present controversy pertains to the application of the agreements to the stipulated facts.

The length of the paid vacation increases as the employee reaches a specified number of years of continuous service during each of which he has rendered "compensated service" on not less than a specified number of days. In the 1941 agreement, an annual vacation of 6 consecutive work days with pay was

granted to each covered employee who rendered compensated service on not less than 160 days during the preceding calendar year. The 1954 amendment divided employees into three categories. An annual vacation of 5 consecutive work days with pay was granted to each employee who rendered compensated service on not less than 133 days during the preceding calendar year. Any such employee with five or more years of continuous service, who during such period of continuous service, rendered compensated service of not less than 133 days (151 days in 1949 and 160 days in each of such years prior to 1949) in each of such years, not necessarily consecutive, was granted a vacation of 10 consecutive work days with pay, while those with 15 or more years of continuous service who during the period of such service rendered compensated service on the specified number of days were entitled to an annual vacation of 15 consecutive days with pay.

The 1960 amendment, inter alia, reduced the number of qualifying days on which compensated services must be rendered by the employee for purposes of vacation with pay. Those with fifteen or more years of continuous service were required to render compensated service on only 100 days during the calendar years subsequent to 1959, those with 3 or more years of service were required to render 110 days of compensated service, and the remaining employees 120 days instead of the former 133 days. The 1964 amendment created an additional category of employees, those with 20 or more years of continuous service who rendered compensated service on the required number of days.

The next man below Morton on the seniority list worked in excess of 133 days during the years 1951, 1952, 1953 and 1954, the years during which Morton was in service. During each of the calendar years from 1955 to 1959, Morton rendered compensated service on not less than 133 days, and during the calendar years of 1960 through 1967, he has rendered compensated service on not less than 110 days. Morton has received 10

days paid vacation in each year commencing with 1957, 5 days vacation in 1956 and none in 1955.

The narrow question for decision is whether, for purposes of determining vacation status and pay, an employee, while in the armed services is to be considered not merely in the "continuous service" of the employer, but also as having rendered "compensated service" on the number of days specified in the agreements.

Section 9(c) (1) of the Act, Section 459(c) (1), 50 U.S.C. War App., provides that a veteran who is restored to his position pursuant to Section 459(b) (A) "shall be considered as having been on furlough or leave of absence" during his period in service. However, he must be restored to his position without loss of seniority, and is "entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence" in effect at the time the employee was inducted into the armed forces. The statute, Section 9(c) (2), Section 459(c) (2), 50 U.S.C. War App., also declares it to be the sense of Congress that the returning veteran must be restored to his position "in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

Plaintiff contends that the length of his vacation with pay is a perquisite of seniority and that the so-called "escalation principle" of Section 9(c) (2) is applicable to his vacation rights. The contrary position of defendant is that under the terms of the agreements involved in this case, the vacation benefits merely constitute fringe benefits of the kind governed by the employer's established rules and practices relating to employees on furlough or leave of absence in effect at the time Morton was inducted.

Defendant relies on the recent case of Magma Copper Company, San Manuel Division v. Eagar, 380 F.2d 318,[1] a Ninth Circuit decision which denied recovery of vacation pay to a returning veteran upon the theory that it is a fringe benefit to which he is not entitled as a perquisite of seniority. On the other hand, plaintiff argues that *Magma* was wrongly decided and that Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), although dealing only with separation allowances and not vacation benefits, "clearly controls the outcome of this case." On their facts, both cases are clearly distinguishable, so that, as appears infra, even a reversal of *Magma* would not necessarily be decisive of the instant case. In *Magma*, the applicable contract provided that to qualify for a paid vacation, an employee must have been continuously employed for at least one year and worked at least 75% of his available shifts within said year. However, unless the employee was in the service of the employer at the end of the vacation earning year, he was not entitled to a vacation. Each employee in *Magma* had been continuously employed during a period just 7 days short of one year before entering military service, but had already worked in excess of 75% of the shifts available in the vacation earning year. The employee was denied vacation pay solely because he was not in the company's actual employ on the anniversary date of his employment.

On the facts specifically involved in *Magma*, we would not follow that Ninth Circuit decision. Of decisive importance in our view is the fact that each employee concerned had worked the requisite number of shifts, and hence had actually *earned* his vacation pay prior to entering the Armed Forces, so that the vacation benefit would have *automatically* accrued to him had he not been called into military service. In the instant case, however, even if Morton be considered as being "continuously employed"

---

1. The Government has applied for certiorari in *Magma*.

although on furlough or leave of absence (as the *Magma* employees should have been), it is nevertheless true that he did not perform any "compensated" service for GM&O during the term of such continuous employment, much less the necessary 133 days each year, and therefore unquestionably did not *earn* the vacation he now claims.

In *Accardi*, the amount of the separation allowance was determined by the length of "compensated service" with the employer, a month of such service being defined as any month in which the employee worked one or more days, and a year of such service being twelve such months or a major portion thereof. The Court held that the real nature of the payments provided for "was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much work he did in the past—no matter how calculated—but by the rights and benefits he forfeits by giving up his job." Hence, it was only natural that those with the most seniority should receive the highest allowance, since they were giving up more benefits than those with less seniority, and for that reason the Court held that the amount of the separation allowances "is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall." Having found that severance pay was a perquisite of seniority, the Court applied the escalator principle first announced in 1946 in Fishgold v. Sullivan Dry Dock & Repair Corp., 328 U.S. 275, 284–285, 66 S.Ct. 1105, 90 L.Ed. 1230, and subsequently restated in other cases, to the effect that *"for the purpose of determining seniority* the returning veteran is to be treated as though he has been continuously employed during the period he spent in the armed forces." Accardi, 383 U.S. l. c. 228, 86 S.Ct. l. c. 771.

In the factual context of *Accardi*, the term "compensated service" as therein defined was no more than a transparent label which could not operate to deprive the veteran of his substantial right to be compensated for the loss of his job on the basis of what he was actually giving up. Even though the term "compensated service" is also involved in the instant case, nothing said in *Accardi* authorizes us to ignore the requirement thereof. Vacations and vacation pay may not be equated with severance pay.

"Vacation pay is in the nature of deferred compensation, in lieu of wages earned each week the employee works and payable at some later time." General Tire & Rubber Co. v. Local No. 512, D.C.R.I., 191 F.Supp. 911, 914. In In re Wil-Low Cafeterias, Inc., 2 Cir., 111 F.2d 429, 432, it was held "A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee." There are numerous other cases announcing the same rule.

Thus, the distinction is between compensation *for loss of a job* (which in a real sense should be measured by the rights and benefits forfeited) and additional compensation *for work actually performed.* That the amount of such additional pay is not "specifically correlated with amounts of work measured in units of production or time" as plaintiff argues, is not significant. We see no valid reason why such additional compensation should be so "specifically correlated", provided it is reasonably predicated upon the performance of services by an employee.

The statute expressly provides that the veteran "shall be considered as having been on furlough or leave of absence" during his military service. An employee on furlough or leave of absence performs no "compensated" service, so that although he is still in the service of his employer, and even though such service is considered as "continuous", the employee would not under normal circumstances be entitled to receive any compensation for the period during

which he is on furlough or leave of absence.

There is nothing in the record to indicate that any employee of GM&O who is on furlough or leave of absence for reasons other than military service would receive compensation during such period or that the time he is on furlough or leave of absence is to be included in ascertaining the number of days on which he has rendered "compensated service". Hence, we believe that if Morton, considered as an employee on furlough or leave of absence, is granted vacation pay by taking into account the period of his "furlough or leave of absence", he would be given greater rights than a non-veteran on similar leave of absence or furlough would receive.

As noted supra, certiorari has been applied for in *Magma*. The Government has furnished us with a copy of its application therefor. Therein are cited, in addition to *Accardi*, the Third Circuit cases of MacLaughlin v. Union Switch & Signal Co., 166 F.2d 46 and Mentzel v. Diamond, 167 F.2d 299, to the effect that the Act embraces vacation rights "which the employee *has earned* and would have received as a matter of course but for his induction."

Under the contract involved in *Mentzel*, employees of 5 years of "service" were entitled to 2 weeks vacation with pay, while those with lesser "service" were granted only one week. The case turned on whether the veteran was entitled to include the time he spent in the Army as "service" with the employer. Since actual performance of work or "compensated service" was not required, the Court held for the veteran.

*MacLaughlin* noted that the reason for inclusion of vacation provision in employment contracts is not merely "to afford the opportunity for rest and relaxation" but also to grant additional wages. The veteran was held entitled to claim those vacation rights which he had actually *earned* during his last year of service with the employer, but no rights for the year in which he performed no

work for his employer. So, too, as to Morton, no vacation rights automatically accrue to him simply because he remains in the service of his employer, continuously or otherwise. Only the actual performance of service for pay for the stated time during his period of continuous service entitles him to such rights.

That the Third Circuit did not intend its *Mentzel* and *MacLaughlin* decisions to require that all returning veterans be granted vacations with pay without regard to whether they were earned is evidenced by its subsequent decision in Dougherty v. General Motors Corporation, 3 Cir., 176 F.2d 561, in which it denied recovery to a veteran seeking vacation pay.

In *Dougherty* the court stated that "vacation pay is calculated to grant relief from, and compensation for, *work already performed*", and held that the contract there involved (which had no anti-veteran objective) was valid, since "the intent and operation [thereof] do not place veterans in a position inferior to that of non-veterans on leave of absence." *Dougherty* cites with approval the Second Circuit cases of Dwyer v. Crosby Co., 167 F.2d 567, and Siaskiewicz v. General Electric Co., 166 F.2d 463. In *Dwyer*, Judge Learned Hand commented that "obviously the considerations which might make it proper that service in the Army should not affect a man's seniority are utterly different from those which should count in computing vacations." To the same effect, in holding that the right to vacation pay is to be determined in accordance with the terms of a non-discriminatory collective bargaining agreement or established rules and practices of the employer, are Foster v. General Motors Corp., 7 Cir., 191 F.2d 907; Monticue v. Baltimore & O. R. Co., D.C.Ohio, 91 F.Supp. 561; and cf. Alvado v. General Motors Corporation, 2 Cir., 229 F.2d 408.

To adopt plaintiff's construction of the contract by reading out of it a non-discriminatory requirement applicable to

all employees would operate to drastically interfere with normal collective bargaining. In any event, we believe, as the decided cases make clear, that the right to vacations and vacation pay is dependent upon the language and purpose of the particular contractual provision involved, so that no generalization is permissible. In a particular case, the right to a vacation may well be based solely on length of service (seniority), in which situation, of course, the time spent in military service should be counted. In other cases, as here, the right must be earned by actual work and is not dependent on length of service alone.

Of significance is the following footnote in the Government's application for certiorari in *Magma*, which in our judgment supports our view that vacation pay is not necessarily a perquisite of seniority and that a reversal of *Magma* would not affect Morton:

> "Vacations may also form a part of an employee's compensation in that they may have to be *earned* by a given period of *actual* service. In that sense, they are not based on 'seniority', i. e., length of service *alone*. However, in this [Magma] case it is not disputed that petitioners worked the requisite percentage of shifts to be entitled to vacation pay. That pay was denied them because they left respondent's employ, not because it was unearned." (Emphasis supplied).

Morton on the other hand was denied vacation pay because it was *unearned* and not because he left GM&O's employ.

We emphasize that Morton's *seniority* is not affected by or dependent upon the actual performance of compensated service, but only his right to vacation pay. For purposes of seniority he should be considered as having been continuously in defendant's employ. But such continuous employment is not to be equated with performance of compensated service on the required number of days.

The Clerk is directed to enter judgment in favor of defendant and against plaintiff.