James ALVADO, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 4, Docket 23190.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1955.

Decided Dec. 22, 1955.

Opinion Revised Feb. 8, 1956.

---

Jacob Schneider, Sidney Berman, Harry Montgomery Leet, New York City, for appellant.

George A. Brooks, New York City (Edward B. Wallace, New York City, and Edward W. Horne, Northport, of counsel), for appellee.

Before FRANK, HINCKS and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

1. Vacation pay does not come within those provisions of 50 U.S.C.A. Appendix, § 308(c),* ensuring restoration of a veteran's rights without loss of seniority, but within the provision that a veteran "shall be entitled to participate in insurance or other benefits of-

---

* Now Universal Military Training and Service Act, § 9, 50 U.S.C.A.Appendix, § 459.

fered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted" into the Armed Forces. See Siaskiewicz v. General Electric Company, 2 Cir., 166 F.2d 463, 465–466; Dwyer v. Crosby Company, 2 Cir., 167 F.2d 567. Consequently, Oakley v. Louisville & N. R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87; Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; and Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, are inapposite, since they dealt solely with the seniority provisions of § 308(c) and not at all with the "other benefits" provision of that clause. Since vacation pay was subject to annual negotiation and agreement, the court below properly denied the plaintiff's motion for summary judgment since he was not entitled, as a matter of law, to "other benefits" calculated under the 1940 agreement.

■ 2. However, plaintiff also alleged that the collective-bargaining agreement adopted in 1946 unlawfully discriminated against returning veterans like himself. If the sole evidence of discrimination were the agreement itself, we would feel constrained by the precedents to affirm the summary judgment. But here plaintiff alleged that defendant intended, by means of the agreement, to discriminate against veterans for its own financial gain. Such an allegation of "bad faith" states a good cause of action under § 308(c), and plaintiff must therefore be given the opportunity at a trial to produce evidence, in addition to the agreement, in support of that allegation.

In Aeronautical Indus. Dist. Lodge v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 1291, 93 L.Ed. 1513, the Court significantly ended its opinion thus: "All this presupposes, obviously, that an agreement containing the 1945 provisions expresses honest desires for the protection of the interest of all members of the union and is not a skillful device of hostility to veterans. There is not the remotest suggestion that the 1945 agreement was other than what it purported to be. * * *" In Ford Motor Company v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, the Court said that, under NLRA, a collective-bargaining agreement is ordinarily not susceptible to attack, because of discrimination, but that this conclusion is "subject always to complete good faith and honesty of purpose. * * *" Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 203–204, 65 S.Ct. 226, 89 L.Ed. 173. In Foster v. General Motors Corporation, 7 Cir., 191 F.2d 907, 912, the court said: "There is no allegation in the complaint that the agreement between the defendant and the union was made in bad faith and no allegations of fact which, in our view, could form the basis for any legal discrimination." In Dougherty v. General Motors Corporation, 3 Cir., 176 F.2d 561, 563, the court said that plaintiff "makes no allegation that such discrimination was intended, and in fact he affirmatively states that the situation of returning veterans 'apparently was not considered.'"

The complaint in the instant case is markedly different. It explicitly alleges that the adoption of the percentage-of-earnings clause for the single year "was a device of hostility directed at veterans and having a substantial adverse effect on them alone"; that the defendant "had the purpose" and "knew and intended" this result; and that defendant "intended such unlawful discrimination" for "its own benefit and gain and to the financial injury and loss of plaintiffs."

Defendant argues as follows: (1) The affidavit of Seaton, defendant's labor relations director, flatly contradicts the complaint's unsworn allegations to which we have referred, since it states facts which show that the agreement was in good faith and was not intended by defendant to discriminate against veterans such as plaintiff; (2) the plaintiff filed no answering affidavit; (3) therefore the summary judgment for defendant was proper. That argument disregards this important factor: The affidavit relates facts peculiarly within the knowledge of

defendant's officials; indeed, it recites that Seaton is "familiar with and has personal knowledge" of the facts. In such circumstances (especially where, as here, such a matter as good faith, or the like, is crucial), the granting of a summary judgment is error. For the opponent of the motion is thereby deprived of the opportunity to cross-examine the movant's officials, and is prevented from having a trial court assisted in its evaluation of their credibility by observing their demeanor while they testify.[2] See, e. g., Colby v. Klune, 2 Cir., 178 F.2d 872; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790; Subin v. Goldsmith, 2 Cir., 224 F.2d 753, 767, certiorari denied 76 S.Ct. 1361; Alabama Great Southern R. Co. v. Louisville & Nashville R. Co., 5 Cir., 224 F.2d 1, 5. In Subin v. Goldsmith, supra, we explained why, in such a case, the failure of the opponent of the motion to file a counter-affidavit has no significance.[3] As we

there recently discussed this point in detail, we shall not do so here. We note that in The Alabama Great Southern R. Company case, 224 F.2d 1, 5, the Fifth Circuit said: "In many recent cases, where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth, we have pointed out that and why the issues may not be disposed of on summary judgment. Other courts have done the same. In Subin v. Goldsmith, 2 Cir., 224 F.2d 753, the majority opinion in a thoroughgoing exposition of why a summary judgment should, and should not, be granted in cases of this general nature, collects and cites the controlling authorities."

We think, therefore, that plaintiff is entitled to a trial on the issue of defendant's intention to discriminate against veterans. If the trial court should find

2. Defendant's argument is peculiarly weak, for plaintiff had submitted interrogatories which defendant had not answered when the summary judgment was entered. Among the interrogatories were these:

"Who represented defendant, or participated on defendant's behalf, in the negotiations with the UAW–CIO which led to the agreement or contract with that union in 1946 governing the terms and conditions of employment of defendant's employees? Which of these participated in negotiation or discussion with the union of the vacation pay provision of that agreement? What are the office and home addresses of each?

"Who among defendant's officials or employees reviewed or approved proposals of defendant concerning the 1946 vacation pay provision? Who reviewed or approved the final provision on defendant's behalf before it was agreed to by defendant? What are the office and home addresses of each?

"Were any instructions, policies, directions, or advice concerning reemployment of veterans sent to division heads or plant managers? If so, on what dates were they sent, who originated and who approved them, who received and who was responsible for acting on them, and what are now (and were then) the titles or positions, and present office and home addresses of each person?

"Were any reports or statements of action taken, policies or programs adopted, numbers of employees affected, or other matters concerning reemployment of veterans prepared at plants or in divisions of defendant? Were any such reports or statements forwarded to higher levels of management of defendants? On what dates were such reports or statements prepared or forwarded, who originated and who approved them, who received and who was responsible for acting on them, and what are now (and were then) the titles or positions, and present office and home addresses of each person?

"What accounting, wage costs, costs of other outlays to employees, financial, or employment data were prepared for or submitted to officials or employees listed in question 18 in connection with 1946 bargaining negotiations with UAW? On what dates were such data prepared or submitted? Who originated and who approved them, who received them, and what are now (and were then) the titles or positions, and present office and home addresses of each person?"

3. If and to the extent that Foster v. General Motors, 7 Cir., 191 F.2d 907, 911–912, may perhaps be read as at odds with our conclusion on this point, we disagree with it.

the agreement discriminatory, it will have to consider the problem of damages.

Our tentative impression is that the damages should be measured by the agreement of April 16, 1945, terminated December 10, 1945. But, as the matter was not argued before us, we think it best to leave the determination, at least in the first instance, to the trial judge, if the question should arise, after he has considered the evidence and arguments of counsel.

Reversed with directions to conduct a trial in accordance with this opinion.