**James ALVADO, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

United States District Court
S. D. New York.
May 4, 1961.
As Amended May 18, 1961.

Sidney S. Berman, New York City, for plaintiff.

George A. Brooks, New York City, for defendant. Edward B. Wallace, New York City, of counsel.

RYAN, Chief Judge.

This suit commenced on July 29, 1952 has after repeated prodding by the Court been brought on for trial.

Plaintiff [1], a veteran and an employee of defendant, sues individually and as a member of a class [2], to recover for vacation allowance for the year 1946 alleged to be due him and other veterans similarly situated. Plaintiff alleges that payment of this vacation allowance was unlawfully refused by defendant, acting under one of the provisions of a collective bargaining contract, which the defendant employer allegedly entered into intentionally, discriminatorily and in violation of Section 8 of the Selective Training & Service Act of 1940, Appendix § 308(c) of Title 50 U.S.C.A., which is now embodied in Section 459 Title 50 U.S. C.A.Appendix.

Summary judgment was granted defendant and plaintiff's cross motion for similar relief was denied in 1954. On appeal, judgment was reversed and the

1. This suit was discontinued as to a coplaintiff named in the Original complaint as filed.

2. For a definition of the said class, see Alvado v. General Motors, 2 Cir., 229 F.2d 408, at page 409.

action was remanded for trial " * * * on the issue of defendant's intention to discriminate against veterans" (229 F.2d 408, 412). Familiarity with that opinion is assumed.

The trial has now been had on this issue as framed by the Circuit Court of Appeals.

Plaintiff was first employed by General Motors, Fisher Body Division, at Tarrytown, New York, some time in 1929; his seniority date is March 3, 1935; he was granted a military leave of absence on February 24, 1944 and he was reinstated on October 29, 1945.

Shortly after plaintiff's reinstatement, on November 21, 1945, The International U.A.W.–C.I.O. went on strike and it was not until 113 days later that the strike ended.

During the lengthy strike, negotiations were held between the duly certified union [3] and defendant; on March 13, 1946 [4] agreement was reached settling the dispute.

A provision of that agreement, Defendant's Exhibit "A", paragraph 151, the focal point of the instant suit, is as follows:

"Vacations:

"(151) Any employe with one or more years' seniority as of July 1, 1946, who works during the pay period beginning June 24, 1946, and ending June 30, 1946, in any General Motors plant or who has been laid off after May 1, 1946, shall be eligible for vacation allowance on the following basis:

"(a) An employe with one year but less than three years' seniority as of July 1, 1946, shall be compensated on the basis of 2% of his gross earnings for the period from January 1, 1945, to December 31, 1945.

"(b) An employe with three years' but less than five years' seniority as of July 1, 1946 shall be compensated on the basis of 3% of his gross earnings for the period from January 1, 1945, to December 31, 1945.

"(c) An employe with five years' or more seniority as of July 1, 1946 shall be compensated on the basis of 4½% of his gross earnings for the period from January 1, 1945 to December 31, 1945.

Each factory employe having one or more years' seniority who is ineligible for vacation pay under the first paragraph above, shall be entitled to a vacation allowance as provided in Paragraphs a, b and c, above, based upon his seniority as of July 1, 1946, provided he has worked during 26 pay periods between the dates of July 2, 1945 and June 30, 1946 in General Motor plants. The vacation allowance of such employes shall be based upon their gross earnings in all General Motors plants during the calendar year 1945.

"Payments shall be made not later than July 31, 1946."

Vacation allowance became a practical subject of collective bargaining in 1940, when it was for the first time included in an agreement for the benefit of hourly rate employees. Subsequent to 1940 and until 1948 it was renegotiated each year. The variations in the vacation allowance provisions of the various contracts for the years 1940, 1941, 1943, 1944 and 1945, are for our purposes slight; on occasion, however, the War Labor Board's assistance was required in reaching agreement on this provision.[5] In 1946, paragraph 151 was modified from past vacation allowance provi-

---

3. The International Union, U.A.W.–C.I.O. had been certified on May 29, 1940 as the exclusive bargaining agent for employees of General Motors Fisher Body including plaintiff and those he purportedly represents.

4. On March 19, 1946 this agreement was ratified.

5. The War Labor Board by a directive in 1942 adjusted the measuring year for vacation allowance backward by six months.

sions in that the vacation allowance due each employee was based on earnings during the previous calendar year (1945) rather than the fiscal year as in the past, and further in that it was calculated on the basis of a percentage of gross earnings.

It is this change which plaintiff contends was in violation of Section 308(c), Title 50, United States Code, in that it was made by defendant with bad faith and intention to discriminate.

Plaintiff received a vacation allowance of $7.50 under the 1946 agreement on the same basis as all other employees. However, if a vacation allowance computed by the 1945 formula had been again agreed upon by the defendant and the Union, plaintiff would have received approximately two weeks' salary as a vacation allowance (his seniority in 1946 was almost eleven years).

On the trial defendant reasserted the defenses of the statute of limitations, laches and res judicata. We will briefly consider these defenses before proceeding to the merits of the suit.

The defense of the statute of limitations was pleaded by an amended answer filed on November 16, 1956. It is the plaintiff's contention that this defense has been waived by defendant's failure to assert it prior to the intermediate appeal. However, amendments are allowable after appeal. Moore's Federal Prac., Vol. 3, page 340, para. 1511; Boweles v. Biberman, 3 Cir., 1945, 152 F.2d 700; Emich Motors Corp. v. General Motors Corp., D.C.Ill.1954, 15 F.R. D. 354, 59 A.L.R.2d 159.

The Congress in the Selective Training & Service Act of 1940 did not prescribe a time in which an action arising thereunder may be brought. This void is properly filled by the application of the pertinent New York statute of limitations. Section 1652, Title 28 United States Code; Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 219, 39 L.Ed. 280; Schiffman Bros. Inc. v. Texas Co., 7 Cir., 196 F.2d 695, 697; Rockton & Rion Ry. Co. v. Davis et al., 159 F.2d 291, 293.

The New York statute of limitations to be applied is Section 48(2) [6] New York Civil Practice Act, which provides for a six-year period of limitation. Leonia Amusement Corp. v. Loew's Inc., D.C., 117 F.Supp. 747, 758.[7]

Both parties agree that this six-year New York Statute of Limitations applies. The defendant in urging the defense of the statute of limitations sets forth four different dates, on any of which it urges the period of limitation correctly can be said to have commenced. They are as follows: the date the collective bargaining contract between the defendant and the Union was ratified, March 19, 1946; the date plaintiff signed the local agreement in his capacity of shop committeeman for the local union at Tarrytown, New York, May 3, 1946; the date plaintiff attended a meeting in which the vacation allowance provision was discussed, June 13, 1946; and July 11, 1946, the date plaintiff was paid his vacation allowance.

The collective bargaining contract of March 19, 1946 provided for the vacation allowance to be paid, "not later than July 31, 1946."

Generally, the purpose of Congress in enacting the pertinent provisions of The Selective Training & Service Act of 1940 was to protect veterans by placing them in the same position they would have been in, with regard to certain protected employment benefits, had they not been called into the Service.

---

6. "§ 48 Actions to be commenced within six years.
    "The following actions must be commenced within six years after the cause of action has accrued:
    "1. * * *

"2. An action to recover upon a liability created by statute, except a penalty or forfeiture."

7. For the application and the extent of the application of the Statute of Limitations, see Moviecolor Ltd. v. Eastman Kodak et al., 2 Cir., 288 F.2d 80.

Assuming that the plaintiff and the class he seeks to represent have a meritorious claim, it would not have arisen under the Act until they had been deprived of a "benefit" which the Act endeavored to protect. The 1946 agreement as to the defendant and the Union represented a binding expression of specific intention as to how vacation allowances were to be paid. However, the 1946 agreement may be likened to an anticipatory breach of contract in that the plaintiff could have sued after the date of the agreement or waited until he was actually affected by that agreement. The other three dates the defendant reasons should be used in the application of the statute of limitations merely tend to establish that Alvado personally had explicit knowledge of the method of computing the vacation allowance. This is of no moment as this action is brought as a class action. There is no way we can determine against what members of the class the period of limitation would militate and what members it would not affect adversely. We must assume that some employees might have been paid as late as July 31, 1946 as provided by the 1946 agreement; the defense of the statute of limitations is accordingly not a bar to this action. The case of Leonick v. Jones & Laughlin Steel Corp., 2 Cir., 258 F.2d 48, is distinguishable from the instant suit, although its application would not change our decision as to this defense of the statute of limitations.

This Court's consideration on remand of the defense of res judicata has been precluded by the Court of Appeals as it distinguished the cases the defendant relies on for this defense from the instant action. The defense of laches was asserted in the original answer and as such was made part of the record on appeal. Although the Court of Appeals did not expressly rule on the merits of the defense of laches, its opinion cannot be construed to warrant this Court's consideration of that defense. If, indeed, its consideration were within a proper exercise of this Court's power, the defense of laches would not be considered a bar to this suit. Reconstruction Finance Corp. v. Harrisons & Crosfield, 2 Cir., 1953, 204 F.2d 366, 37 A.L.R.2d 1117.

The opinion of the Court of Appeals represents the ground rules for this trial after remand; it is within that opinion that the trial gains direction. Specifically, and we quote from that opinion:

"If the sole evidence of discrimination were the agreement itself, we would feel constrained by the precedents to affirm the summary judgment. But here plaintiff alleged that defendant intended, by means of the agreement, to discriminate against veterans for its own financial gain. Such an allegation of 'bad faith' states a good cause of action under § 308(c), and plaintiff must therefore be given the opportunity at a trial to produce evidence, in addition to the agreement, in support of that allegation." At page 411.

The plaintiff has produced no direct evidence in addition to the agreement in support of that allegation.

Further, the Court of Appeals quoting from 50 U.S.C.A. § 308(c) as follows: "[veterans] shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted," maintained, in harmony with the District Court decision, that vacation allowance was given protection by the above quoted portion of § 308(c). The Court of Appeals concluded that since vacation allowance was the subject of annual negotiation the plaintiff was not entitled as a matter of law to "other benefits." The plaintiff could prevail on the basis of the opinions in the following cases: Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513; Ford Motor Company v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048; Steele v. Louisville & R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173;

if the plaintiff established on the trial defendant's "bad faith" as alleged in the complaint (see Court of Appeals opinion, supra, 229 F.2d 408).

■ Plaintiff called Louis G. Seaton as a witness; he is currently vice president in charge of personnel for defendant; during the time covered in the complaint, latter part of 1945 and first part of 1946, he was a member of the defendant's labor relations board, and participated in the negotiations between the Union and defendant. He took an active part in all of these negotiations in 1945 and 1946, with the exception of a short period of time in January 1946. The testimony of Seaton, and all other testimony[8] and exhibits before the Court are the basis of the Court's findings of fact pursuant to Rule 52 F.R.Civ.Proc., 28 U.S.C.

The 1946 agreement was the result of collective bargaining between defendant and the Union authorized to represent the plaintiff. The intent of the defendant in agreeing can readily be said to have been to end the strike, to begin postwar production, to reach a fair and equitable agreement, and not, as the plaintiff contends, to discriminate against the returning veterans. The evidence adequately supports this, and the defendant in its over-all program surpassed the basic protection afforded[9] veterans by the Selective Training & Service Act.

The plaintiff, through the examination of Seaton, sought to establish the exact number of veterans returning to defendant's employ at various times plaintiff deemed pertinent, that defendant had this exact knowledge and used this knowledge in calculating the advantages to it of the vacation proposals it offered and the proposal that was ultimately encompassed in the 1946 agreement. The remainder of plaintiff's examination sought to establish defendant's claimed discrimination along other lines.

The evidence established that in the peak of wartime production defendant employed approximately 400,000 hourly rate employees; just prior to the strike on November 21, 1945 defendant employed 200,000. This difference was due to a decline in war production, reconversion by defendant of its plants which occasioned layoffs, and the temporary nature of the employment of some of those figured in the 400,000. During the strike and in the first part of 1946, there were a large number of returning veterans.[10] The defendant was generally aware of the number of returning veterans and the general effect on them of the 1946 agreement, but did not use these figures in determining the advantages to defendant of any of the particular proposals concerning vacation allowance.

The plaintiff seemingly argues that the veterans of his class should have the benefits of the vacation allowance provision of the 1945 agreement. Not one hourly rate employee of defendant did so benefit by the terms of the 1946 agreement. If then the veterans benefited in this manner, they would be receiving preferential treatment beyond that treatment guaranteed by Congress, assuming the 1946 agreement was not entered into in bad faith.

Under one of the initial proposals of the defendant, the veterans who returned during the strike would receive either 2, 3 or $4\frac{1}{2}\%$, depending on seniority, of what they earned from the end of the strike until June 30, or a period of about three months. This proposal was unacceptable to the Union as it placed the entire 113 days of the strike in the fiscal year which was to be the base year. The Union's counter proposal setting the calendar year 1945 as the base year militated against veterans returning during the strike as they received no vacation allowance for the three months they worked after the strike. It also

8. Plaintiff called a mathematical expert, whose testimony was stricken as irrelevant and immaterial after a motion to that effect by the defendant.

9. Transcript pages 89 and 90.

10. The figure was tentatively placed at anywhere from 40,000 to 50,000.

militated against all those employees, admittedly a smaller group than the veterans, who for one reason or another were on leave of absence other than military in 1945, and those employees who were laid off but returned in the first part of 1946 and who retained their seniority. The Union could easily have been motivated in making this proposal by a desire to protect its strike machinery, their most effective weapon in creating a balance between defendant and its employees, including of course the veterans.

The plaintiff has not established that a financial benefit accrued to the defendant by its acceptance of the Union proposal as opposed to that proposal the defendant offered; in fact, the contrary could very well be concluded. That is, 200,000 employees under the defendant's proposal would not have received vacation allowance for January, February and 19 days of March in 1946 (the period of the strike); presumably under the Union proposal the vacation allowance was only reduced by 9 days in November and the month of December in 1945.

The Union had good reason to have the vacation allowance in the calendar year and the benefit of doing so accrued to the veteran in the long run. The defendant had good reason to accept this proposal and it was not to discriminate against the veterans. Plaintiff has failed to establish that there was collusion between the Union and the defendant, or that defendant intended to discriminate against veterans, or that defendant agreed to the Union proposal in bad faith.

The defendant was motivated in accepting the Union's proposal by a desire to end the strike (interestingly enough, an employee in the maximum seniority class could earn in one day the approximate equivalent of that portion of his vacation allowance resulting from a full month's work); to begin post-war production with the same advantages as defendant's competitors; to provide work for the striking employees, those laid off and returning veterans; and, lastly, a justified belief that vacation allowance was not a gratuity but rather compensation for work performed and, for this reason, a belief that defendant was justified in reducing vacation allowance by a portion of the strike period.

The complaint is dismissed on the merits. Judgment against the plaintiff is directed to be entered forthwith by the Clerk, together with taxable costs and disbursements. So ordered.

## Amendment to Opinion

Through oversight of specific provision of Section 459(d), Title 50 U.S.C.A. Appendix the judgment granting dismissal of this suit was directed to be enterered "together with taxable costs and disbursements"; this latter provision providing for taxing of costs and disbursements is deleted from the order directing entry of judgment of dismissal.