James **ALVADO**, Plaintiff-Appellant,

v.

**GENERAL MOTORS CORPORATION,**
Defendant-Appellee.

No. 303, Docket 27113.

United States Court of Appeals
Second Circuit.

Argued April 5, 1962.

Decided May 24, 1962.

Harry Montgomery Leet, Washington, D. C. (Sidney S. Berman, New York City, Sheldon E. Bernstein, Washington, D. C., Frank Montgomery, Knoxville, Tenn., Joseph M. Stone, Washington, D. C., on the brief), for plaintiff-appellant.

Edward B. Wallace, New York City (George A. Brooks, Henry F. Hebermann, John J. Higgins, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge.

This action was brought by plaintiff in behalf of himself and certain other veterans in the employ of defendant to recover additional vacation benefits for the year ending June 30, 1946. The claim is based upon § 8 of the Selective Training and Service Act of 1940, 50 U.S.C.App. § 308 (1946),[1] which provides:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \* \*

1. N<sub>w</sub> Universal Military Training and Service Act, § 9, 50 U.S.C.A.Appendix, § 459.

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

This case was the subject of a former appeal to this court. In Alvado v. General Motors Corporation, 229 F.2d 408 (2d Cir.1956) the lower court's decision in favor of the defendant on a motion for summary judgment was reversed, and the case was remanded for trial. The trial has now been had and has resulted in a judgment for the defendant, D.C., 194 F.Supp. 314. The plaintiff appeals on the ground that the trial court's findings are clearly erroneous.

The facts are extensively set forth in connection with the opinion in Alvado v. General Motors Corp., supra. Briefly summarized they are as follows:

Beginning in 1940 defendant negotiated successive collective bargaining agreements with the United Auto Workers Union which provided that vacation pay of one or two weeks pay, depending on length of service, be paid to employees who were in the employ of the Company at the end of the vacation year (July 1 to June 30). During the vacation year 1945–46, the employees were on strike from November 21, 1945 to March 19, 1946. In the course of the negotiations for a new collective agreement which would settle the strike, the defendant proposed that the amount to be paid as vacation pay should be based upon the time worked by each employee during the

vacation year. This formula would, of course, have reflected the time lost by reason of the strike. After further bargaining a compromise solution was reached by which the amount of vacation pay to be paid for the vacation year 1945–1946 was to be based upon time worked during the calendar year 1945. The following year the former provision for vacation pay based upon weekly earnings was reinstated. Since most of the veterans returned to their jobs after the end of the strike in 1946, they were entitled to no vacation pay for the vacation year ending in June 1946 under the formula applicable to that year, whereas, under the formula used in other years they would have been entitled to one to two weeks of vacation pay.

We do not concern ourselves with difficulties in the interpretation of the statute since this court has expressly held that rights to vacation pay of the type involved in the present case are within the compass of the term "other benefits" as that term is used in the statute. Siaskiewicz v. General Electric Co., 166 F.2d 463 (2d Cir.1948). On the previous appeal in the present case, while the opinion contains language which might be thought to cast doubt on this interpretation of the statute, the court held that the complaint "states a good cause of action under § 308(c)." Alvado v. General Motors Corp., supra, 229 F.2d at p. 411.

In his opinion on the former appeal Judge Frank, speaking for the court, said:

"If the sole evidence of discrimination were the agreement itself, we would feel constrained by the precedents to affirm the summary judgment. But here plaintiff alleged that defendant intended, by means of the agreement, to discriminate against veterans for its own financial gain. Such an allegation of 'bad faith' states a good cause of action under § 308(c), and plaintiff must therefore be given the opportunity at a trial to produce evidence, in addition to the agreement, in support of that allegation.

"In Aeronautical Indus. Dist. Lodge [727] v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 1291, 93 L.Ed. 1513, the Court significantly ended its opinion thus: 'All this presupposes, obviously, that an agreement containing the 1945 provisions expresses honest desires for the protection of the interest of all members of the union and is not a skillful device of hostility to veterans. There is not the remotest suggestion that the 1945 agreement was other than what it purported to be. * * *' In Ford Motor Company v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, the Court said that, under NLRA, a collective-bargaining agreement is ordinarily not susceptible to attack, because of discrimination, but that this conclusion is 'subject always to complete good faith and honesty of purpose. * * *' Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 203–204, 65 S.Ct. 226, 89 L.Ed. 173. In Foster v. General Motors Corporation, 7 Cir., 191 F.2d 907, 912, the court said: 'There is no allegation in the complaint that the agreement between the defendant and the union was made in bad faith and no allegations of fact which, in our view, could form the basis for any legal discrimination.' In Dougherty v. General Motors Corporation, 3 Cir., 176 F.2d 561, 563, the court said that plaintiff 'makes no allegation that such discrimination was intended, and in fact he affirmatively states that the situation of returning veterans "apparently was not considered."'

"The complaint in the instant case is markedly different. It explicitly alleges that the adoption of the percentage-of-earnings clause for the single year 'was a device of hostility directed at veterans and having a substantial adverse effect on them alone'; that the defendant 'had the purpose' and 'knew and intended' this result; and that defendant 'intended such unlawful discrimination' for 'its own benefit and gain and to the financial injury and loss of plaintiffs.'" Alvado

v. General Motors Corp., supra, 229 F. 2d at p. 411.

The case was returned to the trial court to give the plaintiff "the opportunity to cross-examine the [defendant's] officials" and to assist the trial court "in its evaluation of their credibility by observing their demeanor while they testify." Id. at p. 412.

We have reviewed the testimony introduced at the trial and the exhibits submitted. They serve to support the conclusion that veterans did not fare as well under the 1946 formula as they would have fared under the formula adopted in other years and that the defendant must have known that the formula would have this result. The evidence falls short of establishing the propositions for consideration of which the court directed that the cause be tried.

The material presented on the original motion for summary judgment showed that veterans received less favorable treatment under the revised formula and that the defendant must have known this. The case was returned for trial for the purpose of permitting the plaintiff an opportunity through cross-examination to establish that defendant's intent in adopting the formula was to discriminate against veterans, that the formula was "a device of hostility directed at veterans." This the plaintiff has failed to do.

If knowledge of the result alone were sufficient to establish the requisite intent this court's action in returning the case for trial would have been without point, and the court would not have held, as it did, that the plaintiff was not entitled to summary judgment. For the knowledge of the defendant that the agreement would have the effect on veterans which it did have was clearly inferable from the material then available, and was not denied by the defendant.

■ In order to establish a violation of the Act the veteran must show, in addition to knowledge, that there was a purpose or motive to discriminate. In the Supreme Court cases in which disad-

vantage to veterans was held not to constitute a violation of the Act, there was no doubt that the defendants knew that such a disadvantage would be the result of their arrangements. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed 1048 (1953); Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949). What was missing was proof of "hostility to veterans," see 337 U.S. at p. 529, 69 S.Ct. 1287, proof that the arrangements were not made in "good faith" and with "honesty of purpose." See 345 U.S. at p. 338, 73 S.Ct. 681.

■■ In order to establish that the motive was not hostile discrimination against veterans, in bad faith and with dishonesty of purpose, it is proper to show what the motive was. In the present case the lower court found, with ample support in the evidence, that the defendant's motive was "to end the strike * * *; to begin post-war production with the same advantages as defendant's competitors; to provide work for the striking employees, those laid off and returning veterans; and, lastly, a justified belief that vacation allowance was not a gratuity but rather compensation for work performed and, for this reason, a belief that defendant was justified in reducing vacation allowance by a portion of the strike period."

Also demonstrative of the defendant's motive is the fact that the defendant originally proposed a formula which would have given veterans vacation credit for time worked during the vacation year 1945–1946. It was the Union which proposed the calendar year 1945 as the basis for computing vacation pay.

The plaintiff cites several cases arising under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., particularly Radio Officers' Union of Commercial Telegraphers Union, AFL v. National Labor Relations Board, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954), for the proposition that intent to discriminate is to be inferred from the fact that the discrimination is a natural consequence of the acts performed. But the rule as to discrimination which encourages or discourages union membership is clearly different from the rule as to discrimination against veterans. Under the National Labor Relations Act there is no requirement of hostility, bad faith or dishonesty of purpose. Where the action involved is discriminatory and serves to encourage or discourage union membership it is inhibited by the statute regardless of motive. In the cases arising under the Selective Service Act arrangements which disadvantage veterans have never been held to be violative of the statute in the absence of proof of bad faith. See Ford Motor Co. v. Huffman, supra; Aeronautical Indus. Dist. Lodge 727 v. Campbell, supra; Siaskiewicz v. General Electric Co., supra.

Judgment affirmed.

LUMBARD, Chief Judge (dissenting).

I dissent as I think that there was sufficient proof of General Motors' intent to discriminate against the plaintiff veterans, and I vote to reverse the district court's dismissal of the complaint.

In each of General Motors' fiscal years beginning with 1940, with the sole exception of the fiscal year ended June 30, 1946, GM has given each employee who was in the company's employ at the end of the fiscal year vacation pay amounting to one or two weeks wages, depending on the length of the employee's service.

GM's employees were on strike from November 1945 to March 1946. In the negotiations to settle the strike GM proposed that vacation pay for fiscal 1946 be a percentage of each employee's earnings for fiscal 1946. If the union had accepted, vacation pay would have reflected the 4 months of the fiscal year that the employees were on strike. After considerable bargaining, GM and the union reached an agreement to pay each employee a percentage of his earnings during *calendar* 1945, during which the employees were on strike only 1⅓ months. However, the percentage selected was so high that the employees other than returning veterans got over $2,500,000 more vacation pay than they would have

gotten had GM computed vacation pay under the method used for every year before and after fiscal 1946.

About 50,000 of GM's World War II veterans returned to work at GM's plants between the end of the strike in March 1946 and the.end of GM's fiscal year on June 30, 1946. Since vacation pay for fiscal 1946 was computed as a percentage of calendar 1945 earnings, these employees received no vacation pay for fiscal 1946. Computing veterans' vacation pay in this manner gave GM a saving of over $4,500.000 as compared to computing their vacation pay in the manner used for previous and succeeding years, and a saving of nearly $1,000,000 as compared to computing their vacation pay as a percentage of their actual earnings during fiscal 1946.

On the previous appeal of this case, this court reversed a summary judgment for GM and affirmed a denial of summary judgment for plaintiff, saying that "plaintiff is entitled to a trial on the issue of defendant's intention to discriminate against veterans." 229 F.2d 408, 412 (2 Cir. 1955), cert. denied, 351 U.S. 983; 76 S.Ct. 1050, 100 L.Ed. 1497 (1956). At that time plaintiff had not yet introduced the evidence, which is now in the record, proving that the formula selected for fiscal 1946 practically eliminated the vacation pay of returning veterans while increasing non-veterans' vacation pay. The majority opinion concedes that GM must have known that the formula adopted would have this result. Yet the majority does not find "that there was a purpose or motive to discriminate."

The Supreme Court has interpreted § 8(c) of the Selective Training and Service Act of 1940, quoted supra in the majority opinion, as prohibiting discrimination against veterans because they are veterans. Oakley v. Louisville & Nashville R. R., 338 U.S. 278, 284, 70 S.Ct. 119, 94 L.Ed. 87 (1949); Ford Motor Co. v. Huffman, 345 U.S. 330, 336, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Trailmobile v. Whirls, 331 U.S. 40, 59–60, (majority), 62–64, 67 S.Ct. 982, 91 L.Ed. 1328 (dis-

sent) (1947); Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 (1955), reversing per curiam 211 F.2d 95 (3 Cir. 1954). Accord Siaskiewicz v. General Electric Co., 166 F.2d 463, 466 (2 Cir. 1948).

In the closely related field of employer discrimination designed to encourage or discourage membership in a labor union, under § 8(a) (3) of the National Labor Relations Act, 29 U.S.C. § 158(a) (3), the Supreme Court has held that although an intent to discriminate is a prerequisite to violation of the statute, Radio Officers' Union of Commercial Telegraphers Union, AFL v. N. L. R. B., 347 U.S. 17, 42–44, 74 S.Ct. 323, 98 L.Ed. 455 (1954), there need be no specific evidence of intent "where employer conduct inherently encourages or discourages union membership" since "a man is held to intend the foreseeable consequences of his conduct." Radio Officers' Union v. N. L. R. B., supra, at 45, 74 S.Ct. at 338. Since GM knew that the change in its method of computing vacation pay necessarily discriminated against the returning veterans, it had the requisite intent to discriminate.

To require specific proof of a "hostile" attitude toward veterans, as does the majority, would severely reduce the scope of the rights granted by § 8(c). GM's action certainly was not prompted by a dislike of veterans. It was prompted by a desire to settle the matters in issue on favorable financial terms. Section 8(c) of the Selective Training and Service Act, as I interpret it, requires that this be done in such a way that returning veterans are not in fact treated differently from non-veterans. As the loss to the veterans and the consequent gain to GM are both obvious, I think the agreement with the union was discriminatory.

Nor can GM claim that collective bargaining justifies this discrimination. An employer cannot justify illegal discrimination by proof that a union forced it upon the employer. Radio Officers' Union of Commercial Telegraphers Union, AFL v. N. L. R. B., supra; Fishgold v.

Sullivan DryDock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

Nevertheless, the veterans should not get vacation pay as if they had been working for the entire fiscal year 1946. The majority cites Aeronautical Ind'l Dist. Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949), and Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), as holding that changes which disadvantage veterans are legal so long as there is no explicit proof of hostility to veterans. But I read them as holding that reasonable changes occurring in the regular course of collective bargaining do not violate the statute. Provisions which are not at all uncommon, see Aeronautical Ind'l Dist. Lodge 727 v. Campbell, supra, 337 U.S. at 528, 69 S.Ct. 1287, 93 L.Ed. 1513, such as the computation of vacation pay on the basis of the amount of work rendered, should not be struck down. This court has expressly held that vacation pay is an incident of actual work and that veterans need not be treated as if they had been at work while in military service. Siaskiewicz v. General Electric Co., 166 F.2d 463 (2 Cir. 1948); Dwyer v. Crosby, 167 F.2d 567 (2 Cir. 1948). Therefore, a GM contract to pay an employee, veteran or non-veteran, a percentage of his earnings during the fiscal year 1946 would have been valid. Such an agreement would not have discriminated against veterans any more than GM's refusal to give vacation pay to veterans during fiscal 1944 or 1945 while they were in military service the entire year. However, GM's decision to pay a percentage of calendar 1945 earnings rather than a percentage of fiscal 1946 earnings produced an unjustified discrimination against veterans. Although many veterans worked between the end of the strike and June 30, 1946, they got no vacation pay therefor. The majority quotes the trial court opinion as saying that GM had "a justified belief that vacation allowance was * * * compensation for work performed." Consequently, the veterans are entitled to vacation pay based upon a percentage of their actual earnings during the fiscal year 1946.

I would reverse and remand for computation of the plaintiff's damages.